VENABLE LLP
Ari N. Rothman (SBN 296568)
  anrothman@venable.com
Witt W. Chang (SBN 281721)
  wwchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Defendant
MIKE BLOOMBERG 2020, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RAMZI ABED, MICHAEL FLOWERS, LAUREN LEVITT, and CHRISTOPHER MYRICK, individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE BLOOMBERG 2020, INC., a Delaware corporation; and DOES 1 thru 10, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-02231-CBM-JC<br><br>Hon. Consuelo B. Marshall<br>Courtroom 8B – First Street<br><br>**DEFENDANT MIKE BLOOMBERG 2020, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), OR IN THE ALERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed concurrently with Declaration of Witt W. Chang and [Proposed] Order*]<br><br>Date:            June 16, 2020<br>Time:           10:00 a.m.<br>Courtroom:   8B<br><br>Action Filed:  March 6, 2020<br>Trial Date:     None set |

49066931

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY ACTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on June 16, 2020, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8B of the above-entitled Court, located at 350 West First Street, Los Angeles, CA 90012, defendant Mike Bloomberg 2020, Inc. ("MB2020") will and hereby does move pursuant to FRCP 12(b)(6) to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted; or in the alternative, for an order staying this action pending the United States Supreme Court's forthcoming decision in *Barr v. Am. Ass'n. of Political Consultants,* No. 19-631 (U.S. Jan. 10, 2020), argued May 6, 2020.

Plaintiffs' two-count complaint for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, fails to state a claim upon which relief can be granted because plaintiffs fail to allege facts sufficient to make the required threshold showing that the text messages that are the subject of this suit were sent by an "automatic telephone dialing system" as that term is defined by the TCPA. Specifically, plaintiffs fail properly to allege that Hustle, the software allegedly used to send the text messages, had "the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; <u>and</u> (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). Plaintiffs' failure to do so is fatal, as a matter of law, to the maintenance of their claims under the TCPA.

In the alternative to dismissal, this case should be stayed pending the Supreme Court's upcoming decision in *Barr*, which could result in the invalidation of the TCPA's automatic-call ban provision—the sole basis of plaintiffs' claims.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3 which took place on May 13, 2020. *See* Declaration of Witt W. Chang ¶ 2.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Witt W. Chang, all

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

1  pleadings and papers on file or deemed to be on file in this action, all matters
2  incorporated by reference into the complaint, such other matters of which this Court
3  may take judicial notice, including any papers filed in or transcripts of hearings
4  conducted in this action, and any further evidence and argument as may be presented
5  at or before the hearing on this matter.

Dated: May 18, 2020

VENABLE LLP

By: /s/ Ari N. Rothman
Ari N. Rothman
Witt W. Chang
Attorneys for Defendant
MIKE BLOOMBERG 2020, INC.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

49066931

2

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY ACTION

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................1

II.   ALLEGATIONS IN THE COMPLAINT.........................................................2

III.   LEGAL STANDARD .........................................................................................2

IV.   ARGUMENT ......................................................................................................3

    A.   The Complaint Should Be Dismissed Because Plaintiffs Fail To Allege Facts Showing That An ATDS Was Used To Send The Text Messages At Issue .....................................................................3

        1.   Plaintiffs Fail to Allege That Hustle Has The Capacity To Store Numbers, Or Produce Them Using A Sequential Number Generator ...................................................................4

        2.   Plaintiffs Fail To Allege That Hustle Has The Capacity To Text Phone Numbers Automatically..................................5

        3.   It Cannot Otherwise Be Inferred That An ATDS Was Used ......................................................................................6

    B.   In the Alternative, the Court Should Stay The Action Pending The Supreme Court's Decision in *Barr* ................................................8

        1.   The Upcoming Decision in *Barr* "Bears Upon" This Case .....8

        2.   The Traditional Factors Favor Staying This Action.................9

            a.   Plaintiffs Would Not Be Prejudiced By A Stay............ 9

            b.   MB2020 Would Be Prejudiced By A Stay ................. 10

            c.   A Stay Is The Most Judicially Economic Result ........ 11

V.   CONCLUSION .................................................................................................12

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abu-Hajar v. AutoNation, Inc.*,
   No. CV1703505BROAGRX, 2017 WL 10591886 (C.D. Cal. Aug. 17, 2017) ...................................................................................................... 11

*Ammons v. Diversified Adjustment Serv., Inc.*,
   No. 218CV06489ODWMAAX, 2019 WL 5064840 (C.D. Cal. Oct. 9, 2019) ........................................................................................................ 5

*Armstrong v. Investor's Bus. Daily, Inc.*,
   No. CV182134MWFJPRX, 2018 WL 6787049 (C.D. Cal. Dec. 21, 2018) .............................................................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................... 3

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 812 (2020) ............................................................................. 9, 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................... 3

*Boger v. Citrix Sys., Inc.*,
   No. 8:19-CV-01234-PX, 2020 WL 1939702 (D. Md. Apr. 22, 2020) .................................................................................................... 12

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ........................................................................ 2

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ...................................................................... 9

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) .................................................................... 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...................................................................... 6

*Doerken v. USAA Sav. Bank*,
   No. CV 16-08824-RSWL-MRW, 2017 WL 1534186 (C.D. Cal. Apr. 26, 2017) ....................................................................................... 10

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA  90067
310-229-9900

49066931

ii

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY ACTION

*Duguid v. Facebook, Inc.*,
　926 F.3d 1146 (9th Cir. 2019) ............................................................................. 9

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*,
　No. CV 15-04767-AB (JCX), 2015 WL 6579779 (C.D. Cal. Oct. 19, 2015) ............................................................................................................ 11

*Errington v. Time Warner Cable Inc.*,
　No. 215CV02196RSWLDTB, 2016 WL 2930696 (C.D. Cal. May 18, 2016) ............................................................................................................. 10

*Flores v. Adir Int'l, LLC*,
　685 F. App'x 533 (9th Cir. 2017) .................................................................... 6, 7

*Fontes v. Time Warner Cable, Inc.*,
　No. CV14-2060-CAS(CWX), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015) ............................................................................................................ 10

*Gerritsen v. Warner Bros. Entm't Inc.*,
　112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................................... 2

*Halliwell v. A-T Sols.*,
　No. 13-CV-2014-H (KSC), 2014 WL 4472724 (S.D. Cal. Sept. 10, 2014) ................................................................................................................... 8

*Kolloukian v. Uber Techs., Inc.*,
　No. CV 15-2856-PSG-JEM, 2015 WL 9598782 (C.D. Cal. Dec. 14, 2015) ............................................................................................................ 10

*Lacy v. Comcast Cable Commc'ns, LLC*,
　No. 3:19-CV-05007-RBL, 2020 WL 2041755 (W.D. Wash. Apr. 28, 2020) ............................................................................................................ 12

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) ............................................................................................ 8

*Leyva v. Certified Grocers of Cal., Ltd.*,
　593 F.2d 857 (9th Cir. 1979) .............................................................................. 8

*Lockyer v. Mirant Corp.*,
　398 F.3d 1098 (9th Cir. 2005) ............................................................................ 8

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289,
    203 L. Ed. 2d 300 (2019) ................................................................................ 1, 4

*Mata v. Veros Credit, LLC*,
    No. SACV1698DOCJCGX, 2017 WL 2644633 (C.D. Cal. Jan. 20,
    2017) .................................................................................................................... 5

*McArdle v. AT&T Mobility LLC*,
    No. C 09-1117, 2010 WL 2867305 (N.D. Cal. July 20, 2010) ......................... 11

*Meyer v. Portfolio Recovery Assocs.*,
    LLC, 707 F.3d 1036 (9th Cir. 2012) .................................................................... 3

*Mier v. Owens*,
    57 F.3d 747 (9th Cir. 1995) .................................................................................. 2

*Mina v. Red Robin Int'l, Inc.*,
    No. CV189472PSGGJSX, 2019 WL 8108718 (C.D. Cal. Oct. 15,
    2019) .................................................................................................................... 7

*Moss v. United States Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ................................................................................ 3

*Nakai v. Charter Commc'ns, Inc.*,
    No. CV 19-8035-GW-SSX, 2020 WL 1908949 (C.D. Cal. Apr. 15,
    2020) .................................................................................................................. 12

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ................................................................................ 3

*Seefeldt v. Entertainment Consulting Int'l LLC*,
    No. 4:19-cv-00188, 2020 WL 905844 (E.D. Mo. Feb. 25, 2020) ..................... 12

*Stone v. Sterling Infosystems, Inc.*,
    No. 2:15-CV-00711-MCE, 2015 WL 4602968 (E.D. Cal. Jul. 29,
    2015) .................................................................................................................. 11

*Wright v. EXP Realty, LLC,*.
    No. 618CV1851ORL40EJK, 2020 WL 1149906 (M.D. Fla. Feb. 7,
    2020) .................................................................................................................. 12

**Federal Statutes**

47 U.S.C. § 227(a)(1) .............................................................................................. 1, 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should dismiss plaintiffs' complaint because they failed to allege that an "automatic telephone dialing system" ("ATDS") was used to send the text messages upon which they sued as required to maintain their claims for alleged statutory violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The factual allegations in the complaint are insufficient even to infer, much less establish, that Hustle, the software allegedly used to send the text messages, had "the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289, 203 L. Ed. 2d 300 (2019). In fact, the words "store" and "produce" appear only once when plaintiffs quote the statute in paragraph thirteen of their complaint. And, plaintiffs have not alleged any facts about the text messages such that it would be reasonable to infer that an ATDS was used to send them. Thus, plaintiffs fail to state claims under the TCPA and the Court should dismiss their claims.

Alternatively, the Court should stay this litigation pending the United States Supreme Court's forthcoming decision in *Barr v. Am. Ass'n. of Political Consultants,* No. 19-631 (U.S. Jan. 10, 2020), argued May 6, 2020 ("*Barr*"). In *Barr*, the Supreme Court will decide whether the statutory provision of the TCPA over which plaintiffs here have sued is constitutional and could invalidate that provision, thereby disposing of plaintiffs' lawsuit. A stay pending the Supreme Court's decision will not prejudice any party, especially given that the ongoing COVID-19 pandemic will make many litigation tasks difficult if not impossible until restrictions ease and the alleged violations are not ongoing. Staying the litigation also will conserve judicial and party resources. By contrast, if no stay is issued, the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

parties and the Court's efforts could be rendered entirely moot if the Supreme Court invalidates the TCPA provision that is the basis for this lawsuit.

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege that an unidentified number of "impersonal and generic" text messages "promoting the 2020 presidential campaign of Michael Rubens Bloomberg" were sent to them without their prior express written consent. (Compl. ¶¶ 16-17.) Plaintiffs claim that the text messages at issue were sent using Hustle, "a software based text messaging platform that promotes having the ability to send thousands of messages in minutes." (*Id.* ¶ 17.)

According to plaintiffs, Hustle "enables campaigns like that of DEFENDANT BLOOMBERG to send literally 'thousands of messages in minutes,'" and its website allegedly states "'Hustle is built for organizations to text contacts that they have a pre-existing relationship with, in a compliant way. Organizations can text anyone who previously provided their contact information . . . .'" (*Id.* ¶ 19.) Hustle's website allegedly also references "its software's ability to confer the power to 'carry out over a thousand conversations per hour.'" (*Id.* ¶ 20.)

Based on these allegations, plaintiffs attempt to state claims for "Knowing and/or Willful Violations of the Telephone Consumer Protection Act" (*see id.* ¶¶ 39-44), and "Violations of the Telephone Consumer Protection Act." (*see id.* ¶¶ 45-50.)

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. Dismissal is proper where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (citing *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)).

For the purposes of a motion to dismiss, all factual allegations pleaded in the complaint are assumed to be true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995). However,

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

Supreme Court precedent prohibits courts from accepting as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Thus, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [. . .] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

IV. **ARGUMENT**

    A. **The Complaint Should Be Dismissed Because Plaintiffs Fail To Allege Facts Showing That An ATDS Was Used To Send The Text Messages At Issue**

To maintain their TCPA claims, plaintiffs must allege that an "automatic telephone dialing system," or ATDS, was used to send the text messages upon which they sue. *Meyer v. Portfolio Recovery Assocs.*, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (claim under TCPA requires plaintiffs to establish that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."); *see also Satterfield v. Simon &*

*Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (text message constitutes a call under the TCPA).

To qualify as an ATDS under the TCPA, the equipment used to send the text messages must have had "the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; <u>and</u> (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

### 1. <u>Plaintiffs Fail to Allege That Hustle Has The Capacity To Store Numbers, Or Produce Them Using A Sequential Number Generator</u>

It is plaintiffs' burden to show that Hustle, the alleged ATDS, has the capacity either to store telephone numbers, or to produce telephone numbers using a sequential number generator. *Marks* 904 F.3d at 1053.

Here, however, the complaint lacks any allegation that Hustle stores or produces phone numbers. Instead, plaintiffs' ATDS allegations rest on the thin reed of quotations from Hustle's website, which merely show that Hustle "enables campaigns like that of DEFENDANT BLOOMBERG to send literally 'thousands of messages in minutes.'" (Compl. ¶ 19; *see also id*. ¶ 17 (Hustle "is the developer and provider of a software based text messaging platform that promotes having the ability to send thousands of messages in minutes."); *id*. ¶ 19 (Hustle website allegedly "demonstrates its awareness that the recipients of its automated mass message blasts must first have consented to receive the texts"); *id*. ¶ 20 (Hustle website allegedly references "its software's ability to confer the power to 'carry out over a thousand conversations per hour.'").) The ability to send thousands of messages in minutes—even if presumed to be true—does not establish that Hustle had "the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; <u>and</u> (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). Rather, it shows that humans—like campaign

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

workers—can use Hustle simultaneously to send text messages, which, by itself, does not violate the TCPA.

Accordingly, plaintiffs have not sufficiently alleged one of the two required ATDS capabilities and the Court should dismiss the complaint on this basis alone.

### 2. Plaintiffs Fail To Allege That Hustle Has The Capacity To Text Phone Numbers Automatically

For Hustle to qualify as an ATDS, plaintiffs must also allege that it can automatically text phone numbers without human intervention. *Ammons v. Diversified Adjustment Serv., Inc.*, No. 218CV06489ODWMAAX, 2019 WL 5064840, at *5 (C.D. Cal. Oct. 9, 2019) (finding human intervention precluded technology from qualifying as ATDS); *Mata v. Veros Credit, LLC*, No. SACV1698DOCJCGX, 2017 WL 2644633, at *2 (C.D. Cal. Jan. 20, 2017) ("In order to properly allege use of an ATDS, a lack of human intervention must also be allege[d].").

Here, plaintiffs do not allege that Hustle can automatically dial phone numbers, much less without human intervention. Nor can such a capability be fairly inferred from the complaint's allegations that "Hustle is built for *organizations* to text contacts" (Compl. ¶ 19) (emphasis added), that Hustle's software "enables *campaigns* … to send" text messages (*id*. ¶ 19) (emphasis added), and that Hustle "confer[s] the power to 'carry out … conversations" (*id*. ¶ 20). Indeed, those allegations actually demonstrate—contrary to what is required to establish an ATDS—that Hustle did *not* have the capacity to text phone numbers automatically, but instead required the interaction of its customers, *i.e.* "organizations" and "campaigns," to send messages.

Further, portions of Hustle's website *not* quoted by plaintiffs confirm that Hustle merely enables its customers' *teams* to dial numbers, explaining that "[o]ur simple web and mobile apps allow your *team* to text 1000+ people an hour:"

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

[Figure: "How it works" — 1. Define your goals; 2. Create your script; 3. Start texting; 4. Continue the conversation; 5. Build connections; 6. Track your results. "Our simple web and mobile apps allow your team to text 1000+ people an hour. Your contacts see a normal SMS from a local number."]

(Declaration of Witt W. Chang ¶ 3, Ex. A.)[1]  The human interaction that Hustle apparently requires to send text messages is fatal to plaintiffs' attempt to allege that Hustle is an ATDS.

### 3. It Cannot Otherwise Be Inferred That An ATDS Was Used

Plaintiffs' other allegations likewise are insufficient to reasonably infer that Hustle is an ATDS.  In some inapposite cases involving very robust factual allegations regarding text messages, courts have inferred that an ATDS was used to send the text messages at issue.  For example, the court in *Flores* inferred that the defendant used an ATDS where the plaintiff alleged that "(1) Adir sent Flores an identical text message on four separate occasions; (2) every time Flores received this text message, he sent a text message back to Adir saying 'Stop,' and after sending that message, he 'almost immediately' received another text message from Adir stating that he would no longer receive text messages from Adir; (3) notwithstanding Adir's representation that Flores would not receive further text messages, Flores continued to receive the same text message on at least three additional occasions; (4)

---

[1]  At the motion to dismiss stage, a court may consider a website quoted and cited in the complaint as incorporated by reference. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

both categories of text messages—the initial texts and the removal confirmation texts—were generically formatted and appeared to be scripted; (5) although the initial texts included a reference number, none of the texts referenced plaintiff directly; and (6) the texts came from an SMS shortcode, which are typically associated with automated services." *Flores v. Adir Int'l, LLC*, 685 F. App'x 533 (9th Cir. 2017); *see also Mina v. Red Robin Int'l, Inc.*, No. CV189472PSGGJSX, 2019 WL 8108718, at *3 (C.D. Cal. Oct. 15, 2019) (summarizing allegations required to infer that ATDS was used, including whether the texts came from an SMS shortcode rather than a standard telephone number, whether the recipient could interact with a one-word response (*e.g.* 'Yes' or 'Stop'), whether multiple messages contain similar content, and whether the texts were generically formatted, and frequency of the messages).

By contrast, this is not a circumstance where the use of an ATDS can be inferred. The complaint makes no attempt to plead facts regarding the text messages, except as a vehicle to squeeze in plaintiffs' unfounded attack that the text messages were "impersonal and generic, a hallmark of DEFENDANT BLOOMBERG" (Compl. ¶ 16). Plaintiffs' decision not to include any copies of their text messages with their complaint is telling

In all events, plaintiffs' allegations that the messages are "impersonal and generic" are insufficient to infer that an ATDS was used to send the messages, just as similar allegations in other cases were insufficient. For example, the court in *Armstrong* held that "the facts that the two-part text message Plaintiff received are 'generic and impersonal' and that Plaintiff had no pre-existing business relationship with [defendants] do not create an inference that an ATDS was in fact used." *Armstrong v. Investor's Bus. Daily, Inc.*, No. CV182134MWFJPRX, 2018 WL 6787049, at *6 (C.D. Cal. Dec. 21, 2018)). Similarly, merely alleging "multiple" text messages were sent does not imply that an ATDS was used. *Id.* ("It is equally possible that the two text messages were sent manually by a person or perhaps not

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

using an ATDS at all."). And plaintiffs' conclusory recitation that "DEFENDANTS sent the text messages on behalf of DEFENDANT BLOOMBERG using an automatic telephone dialing system" (Compl. ¶ 13) is disregarded for the purposes of a motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal") (internal citation omitted).

Accordingly, nothing in plaintiffs' complaint establishes that an ATDS was used to send the text messages over which they sue.

### B. In the Alternative, the Court Should Stay The Action Pending The Supreme Court's Decision in *Barr*

In the alternative, a stay is warranted pending the United States Supreme Court's forthcoming ruling in *Barr v. Am. Ass'n. of Political Consultants,* No. 19-631 (U.S. Jan. 10, 2020), argued May 6, 2020, which could invalidate the TCPA provision pursuant to which plaintiffs sue. "A district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Halliwell v. A-T Sols.*, No. 13-CV-2014-H (KSC), 2014 WL 4472724, at *7 (S.D. Cal. Sept. 10, 2014); *Landis*, 299 U.S. at 254.

#### 1. The Upcoming Decision in *Barr* "Bears Upon" This Case

This Court's power to stay proceedings includes the discretion to grant stays "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

Here, a stay is warranted because the Supreme Court's upcoming decision in *Barr* not only "bear[s] upon this case" but is potentially case-dispositive. On January 10, 2020, the Supreme Court granted certiorari to review the Fourth Circuit's decision in *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923

F.3d 159, 170 (4th Cir. 2019), to examine two questions: (1) whether the government-debt exception in the TCPA's automatic-call ban provision violates the First Amendment; and, if so, (2) whether the proper remedy is to sever the exception or invalidate the entirety of the automatic-call ban provision. *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 812 (2020). Oral argument was held on May 6, 2020, and a decision is expected prior to the Supreme Court's summer recess. If the Supreme Court rules that the automatic-call ban provision is invalid due to the unconstitutionality of the government-debt exception,[2] then plaintiffs here would have no claim under the TCPA because they predicate their claims on the same TCPA provision. (Compl. ¶ 17.)

### 2. The Traditional Factors Favor Staying This Action

The three traditional factors used to determine whether a stay should issue all favor staying this litigation. Specifically:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).

#### a. **Plaintiffs Would Not Be Prejudiced By A Stay**

A stay poses no risk of harm to plaintiffs. Mr. Bloomberg withdrew from the presidential race, and plaintiffs have pled no facts to allege ongoing receipt of text messages.

---

[2] Both circuit courts that have addressed the issue—the Fourth and the Ninth Circuits—found that the government-debt exception is unconstitutional. *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1149 (9th Cir. 2019).

49066931                                9
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY ACTION

Likewise, any delay would be minimal because oral arguments in *Barr* have already occurred and a ruling is expected prior to the Supreme Court's summer recess. And, in all events, "[b]ecause delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical disadvantage." *Doerken v. USAA Sav. Bank*, No. CV 16-08824-RSWL-MRW, 2017 WL 1534186, at *2 (C.D. Cal. Apr. 26, 2017) (quoting *Nussbaum v. Diversified Consultants, Inc.*, No. 15–CV–600, 2015 WL 5707147, at *2 (D. N.J. Sept. 28, 2015)). Instead, "courts have held that there is no likelihood of damage or harm to the non-moving party merely because a stay could cause a delay to the plaintiff in receiving money damages." *Id.*

Indeed, a stay could well inure to plaintiffs' benefit because in the absence of one they may needlessly incur significant expense in litigating this matter only to later learn that their claims require immediate dismissal under *Barr*. *Fontes v. Time Warner Cable, Inc.*, No. CV14-2060-CAS(CWX), 2015 WL 9272790, at *5 (C.D. Cal. Dec. 17, 2015) (finding stay of TCPA class action appropriate as pending decision could "render moot substantial efforts by the parties as well as many of the Court's rulings"); *Kolloukian v. Uber Techs., Inc.*, No. CV 15-2856-PSG-JEM, 2015 WL 9598782, at *1 (C.D. Cal. Dec. 14, 2015) (determining pending D.C. Circuit decision warrants stay in TCPA class action as stay "will conserve the Court's and the parties' resources by simplifying the issues in question, streamlining the resolution of substantive issues, and reducing the burden on the parties").

### b.     MB2020 Would Be Prejudiced By A Stay

MB2020 risks wasting resources defending a nationwide class action that could very well be barred by the Supreme Court's upcoming ruling. California federal courts routinely grant stays to prevent unnecessary expenses and distractions. *See, e.g.*, *Errington v. Time Warner Cable Inc.*, No. 215CV02196RSWLDTB, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (granting stay in TCPA case pending decision by D.C. Circuit because "[i]f the case is not stayed, Defendant may suffer

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY ACTION

hardship in conducting discovery and trial preparation"); *Stone v. Sterling Infosystems, Inc.*, No. 2:15-CV-00711-MCE, 2015 WL 4602968, at *2 (E.D. Cal. Jul. 29, 2015) ("The Court sees no reason why Plaintiff should be allowed to conduct discovery on this large class thereby forcing Defendant to incur unnecessary expenses, until it can be established that this case will be proceeding forward."); *McArdle v. AT&T Mobility LLC*, No. C 09-1117, 2010 WL 2867305, at *4 (N.D. Cal. July 20, 2010) (granting stay nine months before Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (decided April 27, 2011) "[b]ecause the viability of prosecuting this case as a class action is in question [and] it is not apparent that Defendants should bear this additional expense").

### c. A Stay Is The Most Judicially Economic Result

A stay would also preserve judicial resources, especially during this time of global pandemic, as the decision in *Barr* may require immediate dismissal of all of plaintiffs' claims. This concern is particularly applicable in the context of class actions, which can expend significant judicial resources as a result of extensive discovery and motion practice. *Abu-Hajar v. AutoNation, Inc.*, No. CV1703505BROAGRX, 2017 WL 10591886, at *3 (C.D. Cal. Aug. 17, 2017) (granting stay nine months before Supreme Court's decision in *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (decided May 21, 2018) and holding "if the case is not stayed pending the Supreme Court's decision . . . the Court will have unnecessarily expended substantial time and resources in litigating this putative class action lawsuit."); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCX), 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (granting stay in TCPA class action pending two Supreme Court decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (decided Jan. 20, 2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (decided May 16, 2016) announced three months and seven months later, respectively, as Court would "face the risk of dedicating substantial resources to proceedings that may ultimately prove unnecessary").

1  Accordingly, the Court should stay this action pending the resolution of *Barr*, as numerous other courts in California and around the nation have recently done. *See, e.g.*, *Nakai v. Charter Commc'ns, Inc.*, No. CV 19-8035-GW-SSX, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) ("The possibility that the automated-call restriction will be invalidated (or at least explained further) warrants a brief stay here that will promote judicial economy."); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) ("a brief stay until the issuance of a significant, perhaps dispositive, Supreme Court decision promotes judicial economy and preserves litigation resources."); *Seefeldt v. Entertainment Consulting Int'l LLC*, No. 4:19-cv-00188, 2020 WL 905844, *1-3 (E.D. Mo. Feb. 25, 2020) (granting stay as consideration of factors "favors a stay for the benefit of *both* parties, as well as for this Court") (emphasis in the original); *Wright v. EXP Realty, LLC*,. No. 618CV1851ORL40EJK, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7, 2020) ("The Court believes that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy."); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (granting stay after balancing competing interests).

## V.  CONCLUSION

For the foregoing reasons, MB2020 respectfully requests that the Court dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted. In the alternative, MB2020 respectfully requests that the Court stay this action pending the Supreme Court's upcoming decision in *Barr*.

Dated:  May 18, 2020

VENABLE LLP

By: /s/ Ari N. Rothman
Ari N. Rothman
Witt W. Chang
Attorneys for Defendant
MIKE BLOOMBERG 2020, INC.